AO 91 (Rev. 08/09)  Criminal Complaint

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| | |
|---|---|
| United States of America<br>v.<br>Lenin Rafael VILLANUEVA Castro<br>(MX) 1983<br><br>*Defendant(s)* | ) ) ) ) ) ) )  Case No. 7·18 mj 1079 |

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of __May 20, 2018__ in the county of __Hidalgo__ in the __Southern__ District of __Texas__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 U.S.C. § 841 | did knowingly and intentionally possess with the intent to distribute approximately 25.44 kilograms of cociane |
| 21 U.S.C. § 846 | conspiracy to possess with the intent to distribute approximately 25.44 kilograms of cociane |

This criminal complaint is based on these facts:

See Attachment "A"

✓ Continued on the attached sheet.

*Approved by [signature] AUSA*

_____
*Complainant's signature*

Antonio Perez IV, HSI Special Agent
*Printed name and title*

Sworn to before me and signed in my presence.

Date: 5/21/2018

_____
*Judge's signature*

City and state: McAllen, Texas

U.S. Magistrate Juan Alanis
*Printed name and title*

On May 20, 2018, U.S. Immigration and Customs Enforcement (ICE), Homeland Security Investigations (HSI) in McAllen, Texas received a duty call from the U.S. Customs and Border Protection, Office of Fields Operations (CBP/OFO) at the Hidalgo, Texas Port of Entry (POE). CBP informed HSI that they encountered a commercial bus, displaying Mexico license plate 93-RB-8B, containing a non-factory compartment. CBP subsequently discovered approximately 25.44 kilograms of cocaine concealed in the compartment.

CBP advised that prior to the seizure, they received information that the aforementioned commercial bus may be transporting narcotics into the United States. CBP also received information that a passenger on the bus, identified as Lenin Rafael VILLANUEVA Castro, was an alleged associate of drug trafficking organization (DTO) utilizing commercial buses to smuggle narcotics into the United States with a final destination of Chicago, Illinois.

HSI Task Force Officer (TFO) M. Quintanilla and HSI Special Agent (SA) A. Perez arrived at the Hidalgo, Texas and conducted an interview of a subject traveling as a passenger in the bus. The subject stated the bus had two bus drivers. The subject stated during the course of the trip he observed a passenger on the bus that was referred to as "VILLANUEVA" acting as an assistant to the bus driver. The subject provided a picture he took of "VILLANUEVA" assisting a bus driver conduct maintenance on the bus.

HSI Task Force Officer (TFO) M. Quintanilla and HSI Special Agent (SA) A. Perez arrived at the Hidalgo, Texas and conducted an interview with Lenin Rafael VILLANUEVA Castro. HSI SA A. Perez read VILLANUEVA his Miranda rights as witnessed by M. Quintanilla. VILLANUEVA stated he understood his rights and voluntarily waived them in writing. VILLANUEVA made the following non-verbatim statements that have been paraphrased and may not be in the order in which he gave them:

VILLANUEVA stated that during the course of the trip he had assisted in driving the bus in Mexico. VILLANUEVA claimed he had previously worked as a bus driver and a tractor trailer mechanic. VILLANUEVA stated he was traveling to Chicago, Illinois to visit a friend. VILLANUEVA stated his friend was not aware he (VILLANUEVA) was currently traveling to visit him in Chicago. When questioned by agents about his story, VILLANUEVA initially provided an inaccurate last name for his friend. VILLANUEVA later conceded that he believed friend's actual last name was the one provided to him by HSI. VILLANUEVA claimed he was planning to stay at his friend's residence in Chicago for approximately 15 days.

When questioned about the Mexican individual who planned the bus's itinerary, initially VILLANUEVA stated he had not spoken to that suspect in approximately three months. However, an inspection of VILLANUEVA's phone revealed that he had been in contact with a phone number linked to the aforementioned suspect during the course of the trip. Agents confronted VILLANUEVA with this information but he stated that the phone number did not belong to the suspect mentioned by HSI. Subsequently, VILLANUEVA changed his story and admitted that the phone number did in fact belong to the suspect that was responsible for coordinating bus itineraries in Mexico. VILLANUEVA was arrested based on his control over the bus and his repeated inconsistent stories to agents.